## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JOSHUA E. COGAN,

        *Plaintiff*,

    v.

SHELDON A. SCOTT *et al.*,

        *Defendants*.

Civil Action No. 19-1797 (TJK)

### MEMORANDUM OPINION

The remaining parties have been trying to negotiate a settlement of this suit for years now, both through mediation and through direct negotiations. They agree they were close. A few months ago, Defendants Sheldon A. Scott and Sheldon Scott Studios, LLC—Scott, for short—represented to the Court that the parties had created an enforceable settlement agreement. The Court permitted Scott to move to enforce that purported agreement, but it prohibited him from quoting or citing in that motion, or filing with it, certain information from some of the parties' mediation sessions. Scott then moved to enforce, but his motion quoted extensively from, and included as exhibits, information that the Court prohibited him from filing. Plaintiff Joshua E. Cogan then moved to strike the motion and sought other sanctions. The Court finds that Scott violated its prohibition, so it will grant Cogan's motion to strike and sanction Scott and his counsel by striking the motion to enforce and ordering Scott's counsel to pay Cogan's reasonable expenses, including attorneys' fees, incurred because of the violation.

## I. Background

In June 2019, Cogan sued Scott (among others), asserting several claims, including that Scott had violated Cogan's copyrights in certain photographs. *See* ECF No. 1. Following an

initial flurry of filings, the parties began mediation before a magistrate judge in September 2019. *See* Minute Order of September 11, 2019. After that mediation proved unsuccessful, the Court referred the parties at their request to the Circuit Executive Mediation Program. *See* Minute Order of November 26, 2019. That mediation went on, in fits and starts, for about two years. *See* Minute Order of September 28, 2020; Minute Order of May 21, 2021; Minute Order of June 24, 2021; Minute Order of September 7, 2021; ECF No. 83. In October 2021, the parties reported that mediation had been "useful with respect to several issues," but "a couple of areas of significant disagreement" remained, about which they were "attempting to come to mutually acceptable terms" on their own. *See* ECF No. 83 at 1.

Those attempts continued for about six months, at the end of which Scott represented to the Court that "the parties reached a settlement agreement in full" and asked for a "method" to prove that the parties had reached an enforceable settlement agreement without "violating the confidentiality of the settlement discussions or process." ECF No. 93 at 1–2; *see also* LCvR 84.9(a) (prohibiting certain mediation-related communications or information from being disclosed outside the Circuit Executive Mediation Program). Cogan disputed that the parties created a settlement agreement, but he did not oppose allowing Scott to try to prove otherwise as long as confidential aspects of the parties' mediations were not disclosed. *See* ECF No. 95 at 5 (citing LCvR 84.9(a)). Concluding that resolving a motion to enforce would "ultimately turn on 'whether the events that occurred post-mediation' show that the parties created an enforceable settlement agreement," the Court allowed Scott to move to enforce and issued an order to govern those proceedings ("Scheduling Order"). *See* ECF No. 96 at 2.

In the Scheduling Order, the Court set a filing schedule and established some parameters to "prevent[] the disclosure of information protected from disclosure by LCvR 84.9(a)" and to

"avoid[] unnecessary disclosure of other confidential aspects of the parties' settlement negotia-
tions."  ECF No. 96 at 2.  Most saliently, the Court prohibited the parties from "quoting, citing,
filing as an exhibit, or otherwise using to support their filings . . . any draft settlement language
. . . prepared or developed in connection with or during their formal mediation sessions through
the Circuit Executive Mediation Program."  *Id.* at 3.  The Court also ordered the parties to "confer
and file a joint stipulation of facts . . . relevant to the Court's consideration" of Scott's proposed
motion to enforce.  *Id.* at 2.  The Court further ordered the parties to submit their filings "provi-
sionally under seal, along with a motion for leave to do so."  *Id.* at 3.  Finally, the Court told the
parties to inform it if the parameters imposed by the Scheduling Order prevented them from having
a "full and fair opportunity to prove [their] point" and, if so, to propose how to proceed "without
violating Local Civil Rule 84.9(a) or otherwise encroaching unnecessarily on the parties' confi-
dential settlement negotiations."  *Id.* (cleaned up).

The parties' efforts to prepare a joint stipulation of facts broke down, so they agreed to
forgo filing one.  *See* ECF No. 97; ECF No. 98.  Scott subsequently filed a motion to enforce.  *See*
ECF No. 99.  In it, he quoted extensively from draft settlement agreements and attached as exhibits
to the motion two such drafts in their entirety.  *See id.* at 6–14; ECF No. 99-3; ECF No. 99-5.
These drafts contained settlement terms that Scott admits were "discussed" during the parties'
mediation sessions, although the drafts themselves were "exchanged during the post-mediation
discussions."  ECF No. 104 at 8–9.  And Scott filed the motion to enforce and its attachments
under seal but failed to file a motion for leave to file under seal because of an "oversight" about
the Scheduling Order's requirements.  *See* ECF No. 99; ECF No. 102 at 1, 4.

Cogan responded by moving to strike Scott's motion to enforce, arguing that the motion
violated the Scheduling Order's requirements and asking the Court to impose several sanctions on

Scott or his counsel for this reason.  *See* ECF No. 100.  The Court ordered Scott to respond to the motion to strike, which he did, and at his request the Court held a hearing on Cogan's motion.  *See* Minute Order of May 25, 2022; Minute Order of June 1, 2022; ECF No. 104; ECF No. 105 at 2.

## II.    Legal Standard

Generally, the party seeking sanctions has the burden to show that they are warranted.  *See United States v. All Assets Held at Bank Julius Baer & Co.*, No. 04-cv-798 (PLF/GMH), 2019 WL 6970727, at \*8 (D.D.C. Sept. 5, 2019); *Clarke v. WMATA*, 904 F. Supp. 2d 11, 20–21 (D.D.C. 2012).  When deciding whether to impose sanctions, the Court must consider whether the behavior in question "is sanctionable under a rule or statute."  *See United States v. Honeywell Int'l Inc.*, 281 F.R.D. 27, 30–31 (D.D.C. 2012).  If a statute or rule is "up to the task," then the Court "ordinarily should rely" on those sources of authority to impose sanctions.  *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991).  If one is not, however, then the Court may "rely on its inherent power" to impose sanctions.  *See id.*

## III.    Analysis

In his motion to strike, Cogan argues that Scott violated the Scheduling Order primarily by quoting, citing, and filing as exhibits to his motion to enforce some draft settlement language that the parties prepared during their formal mediation sessions through the Circuit Executive Mediation Program.  *See* ECF No. 100.[1]  For that reason, he asks the Court to strike the motion to enforce, require Scott or his attorney to pay Cogan's reasonable expenses including attorneys' fees incurred because of the violation, and prohibit Scott from refiling a motion to enforce.  *See id.*  Scott does

---

[1] Cogan also argued that Scott violated the Scheduling Order by failing to file a motion to seal along with his motion to enforce.  Scott later moved to seal to fix this "oversight."  ECF No. 102 at 1.  For simplicity, the Court assumes that Scott's after-the-fact fix cures that violation to eliminate it as a potential basis for sanctions.

not dispute that he quoted, cited, and filed as exhibits to his motion to enforce some draft settlement language that the parties prepared during their formal mediation sessions through the Circuit Executive Mediation Program. *See* ECF No. 104; ECF No. 105. Instead, he contends that sanctions are not warranted because this violation resulted from an "[e]xcusable [m]isinterpretation" of the Scheduling Order. *See* ECF No. 104 at 9–10. For the following reasons, the Court finds that Scott violated the Scheduling Order, and it will sanction both Scott and his counsel by striking the motion to enforce and requiring Scott's counsel to pay Cogan's expenses incurred because of the violation. For now, however, the Court will not prohibit Scott from refiling a motion to enforce.

Under Federal Rule of Civil Procedure 16(f)(1), the Court "may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)–(vii), if a party or its attorney . . . fails to obey a scheduling or other pretrial order."[2] Before the Court may impose sanctions under Rule 16(f), the Court must find that a scheduling or other pretrial order was violated and that the order was "unambiguous." *See Act Now to Stop War & End Racism Coal. & Muslim Am. Society Freedom Found. v. District of Columbia*, 846 F.3d 391, 414 (D.C. Cir. 2017). If so, then Rule 16(f) gives the Court a "wide range of discretion" in deciding what sanctions to impose. *See* 6A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1531, text accompanying nn.10–11 (3d ed. Apr. 2022 update). The Court "need not find that the party acted in bad faith" to impose a sanction—that a scheduling or other pretrial "order was violated is sufficient to allow some

---

[2] Cogan asserts, and Scott does not dispute, that Rule 16(f) applies here because the Scheduling Order is a "scheduling order" under that rule. *See* ECF No. 100; ECF No. 104; ECF No. 105. Cogan also asserts that the Court could invoke its inherent power to sanction Scott. *See* ECF No. 100 at 4. But "various sanctions" are available under Rule 16(f), including a default judgment. *SEC v. Hollywood Trenz, Inc.*, 202 F.R.D. 3, 7 (D.D.C. 2001); *see also* 6A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1531, nn.11–13 & accompanying text (3d ed. Apr. 2022 update). Thus, Rule 16(f) is "up to the task" of providing Cogan with the sanctions he requests, so the Court will rely solely on it. *See Chambers*, 501 U.S. at 50.

sanction." *Id.*, text accompanying n.30.  At a minimum, the Court "must order the party, its attorney, or both to pay the reasonable expenses—including attorney's fees—incurred because of" the violation, unless the violation was "substantially justified or other circumstances make an award of expenses unjust."  Fed. R. Civ. P. 16(f)(2).  Beyond that, the Court should "design the sanction to fit the violation," and "the harshness of the particular sanction ordered may depend on whether the court feels that the party acted improperly or recklessly."  Wright & Miller, 6A *Fed. Prac. & Proc. Civ.* § 1531, text accompanying nn.6 & 30; *see also Shatsky v. Syrian Arab Republic*, 312 F.R.D. 219, 225–26 (D.D.C. 2015) (emphasizing that Rule 16(f) sanctions should be "both just and proportional" to the violation (internal quotation marks omitted)).  Factors the Court may consider include prejudice to the other party from the violation, prejudice to the judicial system from the violation, and the need for deterrence.  *See, e.g.*, *Shatsky*, 312 F.R.D. at 226–28.

The Court first concludes that Scott violated the Scheduling Order by quoting in and filing with his motion to enforce some mediation-developed draft settlement language—specifically, language developed during the parties' mediation in the Circuit Executive Mediation Program— and that the Scheduling Order unambiguously prohibited him from doing so.  As for whether Scott quoted and filed mediation-developed draft settlement language, he does not dispute that he did— for good reason.  *See* ECF No. 104 at 8–10.  *Compare* ECF No. 96 at 2–3, *with* ECF No. 99 at 6– 14; ECF No. 99-3; ECF No. 99-5.  And the Scheduling Order was unambiguous on this point.  It prohibited the parties, without exception or qualification, from "quoting, citing, filing as an exhibit, or otherwise using to support their filings . . . any draft settlement language or other materials prepared or developed in connection with or during [the parties'] formal mediation sessions through the Circuit Executive Mediation Program."  ECF No. 96 at 3.  This prohibition is not subject to "at least two reasonable but conflicting meanings."  *See CNH Indus. N.V. v. Reese*, 138

S. Ct. 761, 765 (2018) (internal quotation marks omitted) (reciting this black-letter standard for when contract language is ambiguous).[3]

Scott asserts that this prohibition could have been clearer had it said that the parties were prohibited from quoting or filing any such settlement language, including mediation-developed draft settlement language that was "exchanged during the post-mediation discussions." ECF No. 104 at 9. But language is not ambiguous just because it could have been even clearer. *See Bates Cnty. Mem. Hosp. v. Azar*, 464 F. Supp. 3d 43, 51 & n.7 (D.D.C. 2020); *NAACP v. DeVos*, 485 F. Supp. 3d 136, 142 (D.D.C. 2020). Here, the Court's prohibition was explicit and unqualified, by its plain terms unambiguously prohibiting any such settlement language from being quoted or filed. And this is so even assuming the Court could have clarified the prohibition further by ex-plicitly "address[ing] every conceivable set of circumstances" to which it applied. *See Bates Cnty. Mem. Hosp.*, 464 F. Supp. 3d at 51.

Scott suggests that the Scheduling Order's observation about how the motion to enforce would turn on "'the events that occurred post-mediation'" can be read as an implicit exception to the prohibition, making it ambiguous. *See* ECF No. 104 at 7 (quoting ECF No. 96 at 2). He reasons that the post-mediation exchange of mediation-developed draft settlement language was a post-mediation event, so the observation that the motion to enforce would turn on those events could be taken to implicitly permit him to quote and file such language. Not so. The introductory observation that the motion to enforce would turn on post-mediation *events* cannot reasonably be

---

[3] "As a general rule," judicial decisions "are to be construed like other written instruments and contracts." 46 Am. Jur. 2d Judgments § 66, n.4 & accompanying text (2d ed. May 2022 update) (footnotes omitted).

read to permit the quoting or filing of mediation-developed draft settlement *language*, particularly in the face of an absolute and unqualified prohibition on quoting or filing such language.

Scott also suggests that the prohibition is ambiguous because he "assumed the Court's requirement that the motions be filed under seal"—a requirement that he also violated, showing that he did not read the Scheduling Order closely—was "designed to permit the parties to disclose" mediation-developed draft settlement language that was exchanged post-mediation. ECF No. 104 at 9. This assumption was unwarranted. The Scheduling Order unqualifiedly prohibited the parties from quoting or filing mediation-developed draft settlement language and separately ordered them to submit their filings under seal along with a motion to seal. ECF No. 96 at 2–3. There would have been no reason for the Court to prohibit in absolute terms the quoting or filing of mediation-developed draft settlement language had the Court meant for the filing-under-seal requirement to permit the parties to do so.

Thus, Scott violated the unambiguous Scheduling Order by quoting and filing mediation-developed draft settlement language. The question, then, is what sanctions are warranted on account of this violation. For the following reasons, the Court will sanction Scott by striking his motion to enforce and sanction Scott's attorney by ordering him to pay Cogan's expenses incurred because of the violation, but the Court will not prohibit Scott from refiling a motion to enforce.

First, the Court will strike Scott's motion to enforce. This is a just and proportional sanction because the contents of and attachments to the motion itself are what violated the Scheduling Order. *See, e.g.*, *El-Amin v. George Washington Univ.*, 626 F. Supp. 2d 1, 3 (D.D.C. 2009).

Second, the Court will order Scott's attorney Johnnie D. Bond, Jr., to pay Cogan's reasonable expenses, including attorneys' fees, incurred because of the violation. *See* Fed. R. Civ. P.

16(f)(2).[4]  This is also a just and proportional sanction—indeed, it is "presumptively appropriate." *See* 3 *Moore's Federal Practice* § 16.91[2][b] (2022).  Both in Scott's opposition to Cogan's motion to strike and during the hearing, Bond effectively took the blame for the violation, which he asserted was the result of his "[m]isinterpretation" of the Scheduling Order.  *See, e.g.*, ECF No. 104 at 9–10.  Thus, requiring Bond to pay Cogan's reasonable expenses and attorneys' fees under Rule 16(f)(2) is appropriate.  *See, e.g.*, *Unique Indus., Inc. v. 965207 Alberta Ltd.*, 764 F. Supp. 2d 191, 205 & n.7 (D.D.C. 2011).

Scott suggests that such a sanction is not warranted because Bond's "misinterpretation" was "[e]xcusable" and "in good faith."  *See* ECF No. 104 at 8–10.  In other words, Scott argues that the violation was "substantially justified" or that "other circumstances make an award of expenses unjust."  *See* Fed. R. Civ. P. 16(f)(2).  Neither is true.

Bond's misinterpretation of the Scheduling Order was not "substantially justified."  *See* Fed. R. Civ. P. 16(f)(2).  To be "substantially justified," the misinterpretation must have had a "reasonable basis both in law and fact."  *Cf. Halverson v. Slater*, 206 F.3d 1205, 1207–08 (D.C. Cir. 2000) (interpreting "substantially justified" in a provision of the Equal Access to Justice Act phrased similarly to Rule 16(f)(2)).  That is not the case here.  As discussed above, the Scheduling Order unambiguously prohibited either party from quoting or filing mediation-developed draft settlement language.

Scott asserts that Bond's misreading was substantially justified because of his "understanding of the implications" of *Whittaker v. United States*, No. 19-cv-199 (CKK), 2021 WL 930265

---

[4] The Court will order Cogan to file a supplemental motion detailing his claimed expenses under Rule 16(f)(2), and it will allow Scott to respond.  *See, e.g.*, *CFTC v. Trade Exchange Network Ltd.*, 159 F. Supp. 3d 5, 7–8 (D.D.C. 2015).

(D.D.C. Mar. 11, 2021), and *Demissie v. Starbucks Corporate Office & Headquarters*, 118 F. Supp. 3d 29 (D.D.C. 2015), which he read as seemingly permitting "the disclosure of post-mediation communications of settlement drafts," including the drafts themselves, even if those drafts "contained settlement terms that . . . were previously discussed during mediation."  *See* ECF No. 104 at 8–9.  But the evidence the courts considered in those motion-to-enforce cases has nothing to do with what the Court's Scheduling Order prohibited the parties from filing in *this* case.  Further, these cases are distinguishable because neither involved mediation proceedings governed by Local Civil Rule 84.9(a)—the rule that prompted the prohibition in the Scheduling Order in the first place.  *See, e.g.*, *Whittaker*, 2021 WL 930265, at *3; *Demissie*, 118 F. Supp. 3d at 30–31.

As for "other circumstances," *see* Fed. R. Civ. P. 16(f)(2), rather than militating against sanctions, they confirm that an award of expenses assessed against Bond is just.  In issuing the Scheduling Order, the Court took great care to establish protocols that balanced providing Scott with a way to argue his motion to enforce, on the one hand, with ensuring that the parties stayed well within the bounds of Local Civil Rule 84.9(a) and otherwise avoided unnecessary disclosure of confidential information related to their settlement negotiations, on the other hand.  *See* ECF No. 96 at 2.  To facilitate this balance, the Court ordered the parties to file a joint stipulation of facts, giving them a way to establish any relevant facts about their negotiations or the terms of the agreement they were negotiating without needing to file anything that the Scheduling Order prohibited them from filing.  *See id.*  And the Court gave the parties a way to inform it if they believed the Scheduling Order's protocols prevented a full airing of the issues relevant to resolving the motion to enforce.  *See id.* at 3.  Bond pursued neither option.  Worse still, he admitted during the hearing that he had some reservations about quoting from and filing mediation-developed draft settlement language, yet he went ahead and did so without even seeking clarification from the

Court that he could do so despite the prohibition's plain terms.  His admitted "oversight" in failing to file a motion to seal along with the motion to enforce reinforces how sloppily he has handled his Court-imposed obligations.  This is not the first time Bond has violated obligations related to preserving the confidentiality of the parties' mediation in the Circuit Executive Mediation Program.  *See* ECF No. 79; Minute Entry of April 21, 2021.  Thus, if nothing else, his pattern of recklessness makes such a sanction just.  *See, e.g.*, *Unique Indus., Inc.*, 764 F. Supp. 2d at 205–06; *Moore v. Chertoff*, 255 F.R.D. 10, 34 (D.D.C. 2008); *see also Jackson v. Wash. Monthly Co.*, 569 F.2d 119, 123 n.24 (D.C. Cir. 1977).

Third, although it is a close call, the Court will not prohibit Scott from refiling a motion to enforce.  Generally, "the concept of proportionality demands that [parties] not be unfairly penalized for [the] negligence of their attorney."  *Butler v. Pearson*, 636 F.2d 526, 531 (D.C. Cir. 1980).  When the party is effectively blameless for sanctionable misconduct, the Court "should first attempt to sanction the attorney" in a way that does not unduly affect the party's ability to pursue his claims or defenses.  *See Shea v. Donohoe Constr. Co.*, 795 F.2d 1071, 1077–78 (D.C. Cir. 1986); *see also* Wright & Miller, 6A *Fed. Prac. & Proc. Civ.* § 1531, text accompanying n.15.[5]  Here, Bond has taken the blame for violating the Scheduling Order, and the Court has no reason to believe that Scott "shares responsibility" for the violation.  *See Unique Indus.*, 764 F. Supp. 2d at 205 n.7.  Further, although Cogan argues that the violation "has prejudiced [his] ability to present his arguments" because he "cannot effectively counter [Scott's] assertions" without also violating

---

[5] To be sure, this does not mean that a party may never be sanctioned in such manner for his attorney's misconduct.  *See, e.g.*, *Shea*, 795 F.2d at 1078.  And, to put Scott on clear notice that the Court may sanction him more harshly in the future if his attorney's misconduct persists, the Court will order Bond to certify in writing that he has shared this Memorandum Opinion with Scott and confirmed that Scott has reviewed it.  *See, e.g.*, *id.*

the Scheduling Order, ECF No. 100 at 4, striking the motion to enforce sufficiently remedies that prejudice. Thus, the Court will not sanction Scott by prohibiting him from refiling a motion to enforce, should he seek to do so.[6]

Of course, if Scott wishes to refile such a motion, he must take care to comply with every jot and tittle of the Scheduling Order as well as the Local Rules and all other applicable requirements. If he does not, the Court will consider at that time what sanctions are appropriate for any continued noncompliance.

## IV.    Conclusion

For all these reasons, the Court will grant Cogan's motion to strike; strike Scott's motion to enforce; order Bond to pay Cogan the reasonable expenses, including attorneys' fees, Cogan incurred because of the violation; order supplemental briefing about those expenses; order Bond to certify in writing that he has shared this Memorandum Opinion with Scott and confirmed that Scott has reviewed it; and order the parties to file a joint status report about whether further motion-to-enforce proceedings will be necessary. A separate order will issue.

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: June 17, 2022

---

[6] The Court will order the parties to file a joint status report addressing whether Scott plans to refile a motion to enforce.